RECARDO TERRY             *

                             *

         Plaintiff,            *

                             *

     v.                       *    Civil No. 18-CV-00031-JKB

                             *

                             *

SONNY PERDUE, SECRETARY    *

UNITED STATES DEPARTMENT OF   *

AGRICULTURE               *

                             *

         Defendant.         *

                             *

                      ******

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

BACKGROUND .................................................................................................... 2

STANDARDS OF REVIEW ................................................................................... 6

ARGUMENT ......................................................................................................... 8

I.    THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S TITLE VII AND REHABILITATION ACT CLAIMS BASED ON ANY ALLEGED EVENTS BEFORE NOVEMBER 27, 2016. ................................................................................ 9

II.    PLAINTIFF FAILS TO STATE A CLAIM FOR RACE OR DISABILITY DISCRIMINATION OR RETALIATION. ....................................................... 10

A.    Plaintiff Fails To Allege Sufficient Facts Regarding Any Comparators. ................... 10

B.    Plaintiff Fails To Allege An Adverse Action, And Thus Cannot State A Claim For Discrimination Or Retaliation. ..................................................................... 12

III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE THE ALLEGED ACTS OF DISCRIMINATION AND RETALIATION WERE LEGITIMATE, NON-DISCRIMINATORY MANAGERIAL DECISIONS, AND PLAINTIFF CANNOT SHOW PRETEXT. .................................................... 16

A.    Plaintiff's Supervisors Had Legitimate, Non-Discriminatory Justifications For Their Decisions Concerning Plaintiff's Schedule. ............................................... 17

B.    The Agency Had Legitimate, Non-Discriminatory Justifications For Auditing Plaintiff's Time And Attendance Records. ................................................... 20

C.    Plaintiff Cannot Show That The Agency's Legitimate, Nondiscriminatory Reasons Are A Pretext For Race Or Disability Discrimination Or Retaliation. ...................... 21

IV.    THE COURT SHOULD DISMISS, OR ALTERNATIVELY, GRANT SUMMARY JUDGMENT FOR DEFENDANT CONCERNING PLAINTIFF'S REASONABLE ACCOMMODATION CLAIM. ..................................................................... 22

CONCLUSION .................................................................................................... 26

## INTRODUCTION

This is a federal-sector employment action in which Plaintiff, Recardo Terry ("Plaintiff"), an Information Technology Specialist with Animal and Plant Health Inspection Service ("APHIS"), United States Department of Agriculture (the "Agency") in Riverdale, Maryland, asserts race and disability discrimination, failure to accommodate his disability, and retaliation by his supervisors for Plaintiff filing a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). In support of Plaintiff's claims, he alleges that his supervisors refused to grant his special schedule requests to allow him three-day weekends and telework Tuesday through Friday, or telework five days a week with a maxi-flex schedule such that he could make up missed hours at his convenience. Plaintiff further alleges that his supervisors performed a six-month audit of his time-keeping records and proposed a notice of suspension in retaliation for his EEO activity.

Title VII makes it unlawful to discriminate in employment on the basis of race, color, religion, sex or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). The Rehabilitation Act, 29 U.S.C. § 794(a), makes it unlawful to discriminate in employment on the basis of Disability. *See id.* Plaintiff, an African-American male, is a member of a protected class by Title VII, but Plaintiff cannot state a claim for race or disability discrimination, retaliation, failure to accommodate, nor can he establish that the Agency's justifications for its actions were pretextual. Plaintiff's Complaint should be dismissed, or in the alternative, the Court should grant summary judgment in Defendant's favor because (1) Plaintiff failed to exhaust his discrimination and accommodation claims based on any alleged conduct before November 27, 2016, and therefore this Court lacks jurisdiction to adjudicate such claims; (2) Plaintiff's discrimination claims fail because Plaintiff's allegations regarding supposed comparators lack sufficient specificity to allow an inference that

he was treated poorly because of a protected characteristic; (3) Plaintiff's discrimination and retaliation claims fail because Plaintiff fails to allege an adverse action, and Plaintiff's supervisors made legitimate, non-discriminatory decisions when considering Plaintiff's scheduling requests or auditing his timekeeping records; and (5) Plaintiff's failure to accommodate claim fails because the Agency provided him reasonable accommodations.

## BACKGROUND

Plaintiff, an African American male, began employment with the Agency in November 2014. Compl. ¶ 6. Plaintiff alleges that he suffers from chronic low back pain arising from an injury while on active duty in the military, PTSD, and anxiety. *Id.* ¶ 7.

As an IT Specialist for the Agency, Plaintiff works for the IT service desk and answers telephone calls from customers for computer or other IT related assistance. June 7, 2017 Decl. of V. Muhammad, Report of Investigation "ROI" at 265, attached hereto as Exhibit 1.[1] Plaintiff's first line supervisor is Vernon Muhammad, an African American male and IT Specialist Supervisor. *Id.* Plaintiff's second level supervisor is Ann Corona, a Caucasian female and the APHIS Agriculture Technical Advisory Committee Department Manager based in Raleigh, North Carolina. June 13, 2017 Decl. of A. Corona, ROI at 198, attached hereto as Exhibit 2.

*Scheduling Accommodations*

On September 2, 2016, Plaintiff submitted a request for reasonable accommodation to David Walton. Compl. ¶ 13. Mr. Walton is a Human Resource Specialist, Reasonable Accommodation Program Manager. June 19, 2017 Decl. of D. Walton, ROI at 395, attached hereto as Exhibit 3. Mr. Walton's office manages the reasonable accommodation process for all of

---

[1] The ROI for Plaintiff's administrative complaint is nearly 500 pages. To avoid inundating the Court with unnecessary documents, the Agency is only submitting excerpts of the ROI.

APHIS. *Id.* Mr. Walton played an active role in Plaintiff's accommodation requests, consulting with Plaintiff, reviewing medical documentation provided by Plaintiff, and making accommodation recommendations to Plaintiff's supervisors. *See id.* In Plaintiff's September 2, 2016 request, Plaintiff requested the Agency designate his home as his permanent work station; give him a set schedule; and allow him Mondays off to attend group therapy. Compl. ¶ 13. Plaintiff alleges that the Agency temporarily approved a Tuesday through Friday schedule from 7:30 am to 6:00 pm with Mondays off, and telework three days a week. *Id.* In early October 2016, after approximately thirty days, Plaintiff's temporary schedule lapsed. *Id.*

On October 27, 2016, Plaintiff alleges that he submitted another request for reasonable accommodation to Mr. Walton with the same demands as his September 2, 2016 request. *Id.* ¶ 14. Plaintiff alleges that the Agency approved Plaintiff's request except for designating his home as his permanent duty station. *Id.* Mr. Muhammad allegedly informed Plaintiff that the Agency could not approve his permanent duty request without supporting documentation from Plaintiff's doctor, and that all employees had to come into the office. *Id.*

On February 22, 2017, Plaintiff alleges that he participated in a mediation session with his supervisors concerning his EEO complaint. *Id.* ¶ 16. Before the meeting commenced, Plaintiff alleges that Ms. Corona stated, "When I found out about the complaint, I told Vernon to take him off of Mondays until we evaluate the situation and see what's going on." *Id.* ¶ 16. Only Plaintiff recalls Ms. Corona making this statement. *See* V. Muhammad Decl., ROI at 278, Ex. 1; A. Corona Decl., ROI at 212, Ex. 2.

On February 24, 2017, Plaintiff allegedly had a telephonic meeting with Ms. Corona, Mr. Muhammad, and Mr. Walton. Compl. ¶ 17. During this call, Plaintiff alleges that Ms. Corona offered a set schedule from 6:30 a.m. to 3:00 p.m. five days a week with only one day in the office

per pay period. *Id.* Mr. Muhammad allegedly informed Plaintiff that he could not work a maxi-flex schedule. *Id.* ¶ 18.

On March 2, 2017, Ms. Corona allegedly informed Plaintiff that he could telework Monday through Friday from 6:30 a.m. to 3:00 p.m. Compl. ¶ 19. Plaintiff alleges that he requested to work additional hours to make up for time missed on Mondays, but Mr. Muhammad denied his request, and informed him that he needed to remain on a set schedule. *Id.* As a result, Plaintiff alleges that he had to take leave on Mondays to attend therapy or other medical appointments. *Id.* ¶¶ 17-18.

*Time Record Audit*

On April 20, 2017, Mr. Muhammad allegedly informed Plaintiff that the Agency conducted a six-month audit of his time and attendance records arising from a March 1, 2017 incident where a supervisor was looking for an IT specialist when Plaintiff was scheduled to be at work and could not find Plaintiff. *Id.* ¶ 21. The audit uncovered discrepancies in Plaintiff's hours reported in the Agency's WebTA system and his actual badge swipes. *Id.* The Agency asked Plaintiff to review the discrepancies and provide a response. *Id.* Ms. Corona allegedly proposed suspending Plaintiff for fourteen days as a result of the audit. *Id.* ¶ 27.

*Procedural Background*

Plaintiff initiated the EEO process when he contacted an EEO counselor on January 11, 2017. ROI at 51, EEO Mediation/Counselor's Report, attached hereto as Exhibit 4. The Agency issued the Notice of Right to File on February 22, 2017. *Id.*; *id.* at 55, Right to File Letter, attached hereto as Exhibit 5. Plaintiff filed a formal complaint on March 2, 2017. ROI at 23, Formal Complaint, attached hereto as Exhibit 6; *id.* at 58, March 7, 2017 Acceptance Letter, attached hereto as Exhibit 7. Plaintiff amended this complaint by letter dated March 10, 2017, which the

Agency accepted and retroactively incorporated into the March 2, 2017 filing. ROI at 62-64, April 13, 2017 Acceptance Letter, attached hereto as Exhibit 8. Plaintiff alleged that management discriminated against him when he was not given a reasonable accommodation of 4 days a week of telework with Mondays off. ROI at 51, Ex. 4. The Agency accepted and referred the following allegations for investigation:

Whether the Complainant was subjected to discrimination and harassment (nonsexual) based on race (black), mental disability (Post-Traumatic Stress Disorder), physical disability (unspecified), and reprisal (current EEO activity), when:

1. On an unspecified date, management denied his reasonable accommodation request to telework;

2. On an unspecified date, management cancelled his compressed work schedule and denied his request to have his home deemed his permanent duty station;

3. On an unspecified date, management denied his maxi-flex schedule request, and instructed him to use his annual leave; and

4. On February 22, 2016, he was subjected to harassment, when, during a meeting with management officials, his first-level supervisor stated she was taking away his Mondays due to the filing of his EEO complaint.

ROI 62-64, Ex. 8.

The Agency conducted an investigation, and Plaintiff received a copy of the Report of Investigation on July 6, 2017. Final Agency Decision ("FAD") at 2, attached hereto as Exhibit 9. On August 22, 2017, Plaintiff requested a Final Agency Decision. *Id.* In October 2017, the Agency sent Plaintiff a Final Agency Decision denying his claims that the Agency failed to accommodate his disability, and denying his claims of disability, racial discrimination and retaliation. *Id.* The Agency concluded that it reasonably accommodated Plaintiff's disability and did not act discriminatorily when it engaged in an interactive process and allowed Plaintiff telework, which facilitated his successful performance of his duties. *Id.* at 19. The Agency noted

that Plaintiff failed to provide medical documentation stating that his medical condition required him to work from home full time. *Id.* The Agency concluded that it did not discriminate or retaliate against Plaintiff when it denied his request for a maxi-flex schedule because service desk staff needed to be on a set schedule and Plaintiff offered no evidence that his coworkers were on a maxi-flex schedule. *Id.* at 20-21.

Plaintiff filed the Complaint in this Court on January 3, 2018, alleging discrimination, retaliation, and failure to accommodate based on the Agency 1) denying his reasonable accommodation requests to telework in 2016; 2) cancelling Plaintiff's compressed work schedule and denying his request to designate his home as his permanent duty station in 2016; 3) denying his request for maxi-flex scheduling; 4) removing his Mondays off; and 5) auditing Plaintiff's time and attendance records in spring 2017 and proposing a fourteen day suspension.

## STANDARDS OF REVIEW

### *Motion to Dismiss Pursuant to Rule 12(b)(1)*

It is the plaintiff's burden to establish that jurisdiction is proper. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 Fed. Appx. 960 (4th Cir. 2004). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed in one of two ways: either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* at 192. On the other hand, in a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* In that circumstance, the court may

regard the pleadings as mere evidence on the jurisdictional issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). That is, "the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Khoury*, 268 F. Supp. 2d at 606.

***Motion to Dismiss Pursuant to Rule 12(b)(6)***

A motion to dismiss for failure to state a claim under Rule 12(b)(6) serves to test the legal sufficiency of the complaint. *See e.g., Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudg[ing] their claims across the line from conceivable to plausible.'" *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Although courts must generally accept as true the allegations of a complaint, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

***Motion for Summary Judgment Pursuant to Rule 56(a)***

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). As the Supreme Court has emphasized, "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version . . . ."). On issues for which the nonmoving party will have the burden of proof, it is the responsibility of the nonmoving party to confront the motion for summary judgment with evidence to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324.

A principal purpose of Rule 56 "is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex*, 477 U.S. at 323-24; *see also id.* at 327 (summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'") (internal quotation marks omitted). The Fourth Circuit also has stressed that trial judges have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

## ARGUMENT

I.    THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S TITLE VII
      AND REHABILITATION ACT CLAIMS BASED ON ANY ALLEGED
      EVENTS BEFORE NOVEMBER 27, 2016.

Plaintiff failed to exhaust his administrative remedies with regard to his discrimination and

accommodation claims, insofar as he alleges discriminatory conduct before November 27, 2016,

because he did not consult an EEO counselor within forty-five days of such alleged events. As

such, this Court lacks subject matter jurisdiction over Plaintiff's Title VII and Rehabilitation Act

claims arising from any alleged events before November 27, 2016.

This Court lacks subject matter jurisdiction over Title VII and Rehabilitation Act claims

for which a plaintiff has failed to exhaust administrative remedies. *See Murphy v. Adams*, No.

DKC-12-1975, 2014 WL 3845804, at *7 (D. Md. Aug. 4, 2014) (quoting *Balas v. Huntington

Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013)); *Snead v. Board of Education of Prince

George's County*, 815 F. Supp. 2d 889, 894 (D. Md. 2011) (plaintiff must exhaust administrative

remedies prior to filing a lawsuit alleging Rehabilitation Act violations). One "requirement for

exhausting administrative remedies is that the aggrieved individual 'must consult a Counselor prior

to filing a complaint in order to try to informally resolve the matter.'" *Mallik v. Sebelius*, 964 F.

Supp. 2d 531, 540 (D. Md. 2013) (quoting 29 C.F.R. § 1614.105(a)). A prospective plaintiff must

contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory

or, in the case of personnel action, within 45 days of the effective date of the action," [29 C.F.R.]

§ 1614.105(a)(1), unless the individual has a reasonable explanation for his delay, in which case

the EEOC will extend the deadline, *id.* § 1604.105(a)(2). *Id.* "A prospective plaintiff's failure to

contact an EEO Counselor within the 45 days prescribed 'is tantamount to failure to timely exhaust

all administrative remedies.'" *Upshaw v. Tenenbaum,* No. PWG-12-3130, 2013 WL 3967942, at

*5 (D. Md. July 31, 2013) (quoting *Blount v. Dep't of Health & Human Servs.*, 400 F. Supp. 2d 838, 841 (D. Md. 2004).

Generally, "if the plaintiff fails to seek EEOC counseling within the prescribed time period," the federal court "must dismiss an employment discrimination claim." *Van Durr v. Geithner*, No. AW-12-2137, 2013 WL 4087136, at *4 (D. Md. Aug. 12, 2013) (quoting *Emmert v. Runyon*, No. 98-2027, 1999 WL 253632, at *2 (4th Cir. Apr. 29, 1999) (per curiam)). Here, Plaintiff did not contact the EEO counselor until January 11, 2017. ROI at 51, Ex. 4. Accordingly, this Court should dismiss Plaintiff's Title VII and Rehabilitation Act claims to the extent Plaintiff bases such claims on alleged conduct before November 27, 2016.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR RACE OR DISABILITY DISCRIMINATION OR RETALIATION.

### A. Plaintiff Fails To Allege Sufficient Facts Regarding Any Comparators.

To state a claim for disparate treatment, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class."[2] *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012). The Complaint lacks factual allegations in support of the fourth element.

Plaintiff's Complaint lacks sufficient factual allegations regarding supposed comparators to state a disparate treatment claim. Where, as here, a plaintiff's discrimination claim rests entirely upon comparator analysis, a plaintiff "must demonstrate that the comparator was 'similarly situated' in all relevant respects." *Johnson v. Baltimore City Police Dep't*, No. ELH-12-2519,

---

[2] According to the Fourth Circuit in *McCleary-Evans v. Md. Dept. of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015), to state a plausible claim of discrimination, a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute." *Id.* at 585.

2014 WL 1281602, at *19 (D. Md. Mar. 27, 2014) (quoting *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013), *aff'd*, 576 F. App'x 199 (4th Cir. 2014)). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Comparators need not be precisely equivalent in position to a plaintiff, but there must be sufficient similarity between them to allow appropriate comparison. *See Roberts v. Coffey*, No. DKC 10-3359, 2012 WL 2000353, at *4 n.11 (D. Md. June 4, 2012); *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel . . . ."), *aff'd*, 553 U.S. 442 (2008).

Plaintiff has not alleged facts to support the existence of actual comparators, who were treated differently, sufficient to raise an inference that Plaintiff suffered discrimination based on any protected status. Indeed, Plaintiff makes the conclusory allegation that "Defendant knowingly and intentionally subjected Plaintiff to disparate treatment based on his race, when the Agency denied Plaintiff Terry the same benefits and privileges of employment that it provided to Caucasian employees who were similarly situated." Compl. ¶ 27. However, the Complaint fails to provide any factual allegations describing these similarly situated Caucasian employees. Instead, the Complaint alleges that four of Plaintiff's Caucasian co-workers telework from their homes five days a week, and at least two of these individuals have disabilities. *Id.* ¶ 14. The Complaint elsewhere avers that three Caucasian employees were allowed to work from home permanently.

11

*Id.* ¶ 16. The Complaint does not provide the names of these employees, their supervisor, their positions with the Agency, or the circumstances under which the Agency permitted them to telework. Plaintiff fails to plead facts showing these allegedly more favorably treated co-workers were true comparators in that the co-workers held the same position, performed the same work, and were supervised by the same individuals as Plaintiff.

As such, this Court cannot plausibly infer that Plaintiff was treated adversely because of an illicit motive. "[B]are allegations that white colleagues were treated more favorably amounts to little more than speculation that the adverse treatment of Plaintiff was race-based." *Sillah v. Burwell*, 244 F. Supp. 3d 499, 513 (D. Md. 2017); *see also Coleman*, 626 F.3d at 191 (dismissing a claim where "the complaint fails to establish a plausible basis for believing [the comparator] and Coleman were actually similarly situated or that race was the true basis for Coleman's termination."). Without more, Plaintiff's claims do not plausibly aver that he was discriminated against because of his race or disability status by virtue of disparate treatment.[3]

### B. Plaintiff Fails To Allege An Adverse Action, And Thus Cannot State A Claim For Discrimination Or Retaliation.

Title VII prohibits only certain kinds of employment actions, and only actions taken against an employee on a prohibited basis. *See* 42 U.S.C. §§ 2000-e2(a). In other words, "the existence of some adverse employment action is required." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). An "adverse employment action" is one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with

---

[3] Additionally, Mr. Muhammad, Plaintiff's supervisor, is African American and male. That the decisionmaker is "of the same protected class [as Plaintiff] suggests no discriminatory motivation." *Demesme v. Montgomery County Gov't*, 63 F. Supp. 2d 678, 683 (D. Md. 1999), *aff'd*, 208 F.3d 208 (4th Cir. 2000); *see also James v. Verizon*, 792 F. Supp. 2d 861, 869-70 (D. Md. 2011) ("proof that the decision-maker is a member of the same protected class as [plaintiff] weakens any possible inference of discrimination" (citation omitted)).

significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

To state a claim of retaliation under Title VII or the Rehabilitation Act, a plaintiff must demonstrate that his employer acted adversely against him. *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 789 (D. Md. 2013) (plaintiff must allege three elements for Title VII retaliation: "(1) he engaged in a protected activity, (2) his employer acted adversely against him, and (3) the protected activity was causally connected to the adverse action.") (citations omitted); *Wonasue v. University of Maryland Alumni Ass'n,* 984 F. Supp. 2d 480, 491 (D. Md. 2013) (plaintiff must allege he engaged in a protected activity, his employer took an adverse employment action against him, and a causal connection existed between the protected activity and the adverse action for retaliation claim under the Rehabilitation Act). Unlike a discrimination claim, a plaintiff need not establish an "ultimate employment decision" to make out a retaliation claim; rather, he must show only that the action would be seen as materially adverse through the eyes of a reasonable employee. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Actions like "petty slights, minor annoyances, and simple lack of good manners" are insufficient to support a retaliation claim, even under the Rehabilitation Act. *Id*. Thus, an action is materially adverse if, from an objective point of view, "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*.

Plaintiff does not allege an adverse action for purposes of his discrimination or retaliation claims. Plaintiff complains about his supervisors' refusal to cater to Plaintiff's special scheduling requests, including an alternative work schedule affording him three-day weekends and telework, a compressed work schedule affording him three-day weekends and telework, maxi-flex

scheduling where he could make up missed hours at his leisure, and his supervisors refusal to designate his home his permanent duty station. *See* Compl. ¶¶ 27, 34, 47. Plaintiff further complains that his supervisor retaliated against him by undertaking an audit of his time and attendance records, and proposing a notice of suspension. *Id.* ¶ 21. None of these actions demonstrate an adverse action for a discrimination claim or even under the more permissive standard for retaliation.[4]

The Fourth Circuit has held that removing an employee from an alternative work schedule "would [not] have 'dissuaded a reasonable worker from making or supporting a charge of discrimination'" necessary to state a retaliation claim. *Parsons v. Wynne*, 221 Fed. Appx. 197, 198 (4th Cir. 2007) (citations omitted). This Court has followed the Fourth Circuit's instruction. *See, e.g.*, *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 603 (D. Md. 2011) ("[plaintiff's] return to an ordinary work schedule (rather than his earlier tour of duty) was also not an adverse action" sufficient to state a retaliation claim), *aff'd*, 465 Fed. Appx. 274 (4th Cir. 2012); *see also Dailey v. Lew*, 2016 WL 1558150, No. GLR-15-2527, at *5-6 (D. Md. April 18, 2016) (imposing leave restrictions on Plaintiff, including requiring plaintiff to request leave without pay instead of advanced annual leave and to provide documentation from a medical provider for absences due to illness, were not adverse actions for purposes of retaliation claim), *aff'd* 670 Fed. Appx. 142 (4th Cir. 2016). Other courts have similarly refused to find a denial of an alternative work schedule to be an adverse action. *See e.g., Hunter v. District of Columbia*, 905 F. Supp. 2d 364, 373 (D. D.C. 2012) (defendant's denial of plaintiff's request for an alternative work schedule of Monday through Thursday with Fridays off did not rise to the level of an adverse employment action).

---

[4] Plaintiff alleges retaliation based on his January 11, 2017 EEO activity. Compl. ¶¶ 33-34. As such, any actions of Plaintiff's supervisors before January 11, 2017 cannot form the basis of Plaintiff's retaliation claim.

Accordingly, Plaintiff's schedule-related complaints fail to state a claim for discrimination or retaliation.

Plaintiff's allegations concerning the Agency's audit of his time and attendance records or a proposed fourteen-day suspension fare no better. Even under the "lower bar" applicable to retaliation claims, "none of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee 'AWOL'; or issuing a personal improvement plan, 'an "Attendance Warning," ' a verbal reprimand, 'a formal letter of reprimand,' or 'a proposed termination.'" *Wonasue,* 984 F. Supp. 2d at 492 (quoting *Rock v. McHugh,* 819 F. Supp. 2d 456, 470-71 (D. Md. 2011)); *Simmington v. Gates,* No. DKC-08-3169, 2010 WL 1346462, at *13 (D. Md. March 30, 2010) (questioning plaintiff about her attendance was not an adverse action for purposes of retaliation claim). Moreover, Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern,* 548 U.S. at 67.

An audit of timekeeping records or a proposed suspension are insufficient to deter a reasonable person from pursuing a discrimination claim. *See, e.g., Jeffers v. Thompson,* 264 F. Supp. 2d 314, 330 (D. Md. 2003) (proposed suspension does not constitute an adverse action for retaliation claim under Title VII); *Coates v. Vilsack,* No. PWG-12-1787, 2015 WL 1013402, at *6 (D. Md. Mar. 6, 2015) ("[N]either the letter of reprimand nor the letter of proposed suspension is an adverse employment action on its own."); *Muldrow v. Blank,* No. PWG-13-1200, 2014 WL 938475, at *10 (D. Md. Mar. 10, 2014) (noting that neither "'a formal letter of reprimand,' or 'a proposed termination'" qualifies as "an adverse employment action in a retaliation claim" (quoting *Rock,* 819 F. Supp. 2d at 470-71)).

Accordingly, this Court should dismiss Counts I, II, and IV for failure to state a claim.

**III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE THE ALLEGED ACTS OF DISCRIMINATION AND RETALIATION WERE LEGITIMATE, NON-DISCRIMINATORY MANAGERIAL DECISIONS, AND PLAINTIFF CANNOT SHOW PRETEXT.**

Where, as in this case, there is no direct evidence of discrimination, such claims are analyzed under the three-pronged burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must make out a prima facie case of discrimination under Title VII to withstand a motion to dismiss or for summary judgment. *See Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007). If the Plaintiff succeeds in carrying out the initial burden, then "the burden shifts to the employer…'to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Id.* (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)). The *McDonnell Douglas* burden-shifting framework also applies to a plaintiff's retaliation claim. *See Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (Title VII retaliation); *Works v. Colvin*, 519 Fed. Appx. 176, 186 (4th Cir. 2013)(citing *Brockman v. Snow*, 217 Fed. Appx. 201, 207, 208 n.6 (4th Cir. 2007) (Rehabilitation Act retaliation)).

Once the employer articulates such a reason, the burden shifts back to the plaintiff to demonstrate that the given reasons were a pretext for unlawful discrimination. *Id.* To show pretext, a plaintiff must proffer sufficient evidence such that a reasonable trier of fact could conclude that the employer's explanation is false or "'unworthy of credence,'" *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (quoting *Texas Dep. Of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)), and that discrimination or retaliation was the true reason for the adverse employment action. *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 515 (1993) (plaintiff must prove "*both* that the reason was false, *and* that discrimination was the real reason") (emphasis in original). When

the question at issue is whether the decisionmaker acted with discriminatory animus, only the "perception of the decision maker" is "relevant" to the question. *Hux v. City of Newport News, Va.*, 451 F.3d 311, 319 (4th Cir. 2006) (citations omitted). Summary judgment in defendant's favor is appropriate if the plaintiff fails either to make a prima facie case or to rebut the employer's proffered explanation of its actions. *Linton v. John Hopkins Univ. Applied Physics Lab., LLC*, No. JKB-10-276, 2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011).

### A. Plaintiff's Supervisors Had Legitimate, Non-Discriminatory Justifications For Their Decisions Concerning Plaintiff's Schedule.

Here, Plaintiff's supervisors made legitimate and non-discriminatory managerial decisions when they denied certain of Plaintiff's special scheduling requests because he failed to provide adequate medical documentation to substantiate his requests and the Agency needed to have its IT service desk on a set schedule to ensure adequate staffing to handle call traffic. Plaintiff's supervisors made scheduling decisions with respect to Plaintiff under the supervision of, and in consultation with, Mr. Walton, the Human Resource Specialist, Reasonable Accommodation Program Manager. The Agency provided Plaintiff multiple reminders and opportunities to provide updated medical documentation to support his ongoing special schedule requests, but Plaintiff did not heed this advice.

On September 2, 2016, Plaintiff submitted a request for reasonable accommodation, requesting the Agency designate his home as his permanent workstation; provide him a set schedule; and Mondays off to attend group therapy. Compl. ¶ 13. Around September 15, 2016, the Agency granted Plaintiff a compressed work schedule from Tuesday to Friday with Mondays off to allow Plaintiff to attend a twelve-week group therapy program in accordance with a May 2, 2016 letter from Plaintiff's Licensed Clinical Social Worker at the VA. ROI at 29, attached hereto as Exhibit 10; *id*. at 112, attached hetero as Exhibit 11. Mr. Muhammad informed Plaintiff that

his schedule would revert to the standard five day per week schedule upon completion of the twelve-week therapy program. ROI at 29, Ex. 10. The Agency did not grant Plaintiff's request to designate his home as his permanent duty station, but the Agency permitted telework and an alternate work location in the building if Plaintiff required a workspace with less traffic or noise. *Id*. The Agency also permitted Plaintiff a permanent shift of 7:30 am to 6:00 pm. *Id*.

On September 30, 2016, Mr. Muhammad reminded Plaintiff that he had a reasonable accommodation in place to allow him to attend his Monday sessions at the VA for the twelve weeks as described in the May 2, 2016 letter. ROI at 39, attached hetero as Exhibit 12. On the advice of Mr. Walton, Mr. Muhammad informed Plaintiff that his schedule would revert to five days a week from 9:30 am to 6:00 pm if Plaintiff did not submit medical documentation supporting continuation of his current schedule. *Id*.; *id*. at 331, attached hereto as Exhibit 13. On October 12, 2016, Mr. Muhammad informed Plaintiff that he needed "to submit the documentation stating the need to continue the compressed work schedule by Monday Oct 17th or your schedule will revert back to a 5 day 8 hour tour of duty beginning on Tuesday October 18th." ROI at 40, Ex. 12.

Plaintiff provided additional letters from medical practitioners, but those letters did not require him to have Mondays off or to have his home declared his permanent duty station. Plaintiff provided a letter dated October 20, 2016 from a Staff Psychologist with the VA, stating that Plaintiff began attending weekly individual therapy sessions in October 2016 on Monday afternoons concerning his PTSD, and recommending that Plaintiff continue weekly sessions and workplace accommodations such as telework, a flexible work schedule, or a compressed work schedule. ROI at 419, attached hetero as Exhibit 14. Plaintiff also provided a letter dated October 3, 2016 from Dr. Jyoti Racha, a Staff Psychiatrist with the VA, stating that Plaintiff was currently in Outpatient treatment in the Mental Health Clinic at VA in Washington, D.C. for PTSD and

depression, and suggesting that Plaintiff "may benefit with the reasonable accommodations of teleworking 5 days a week." ROI at 116, attached hereto as Exhibit 15. Plaintiff provided a letter dated September 7, 2016 from Dr. Jeffrey Highfill recommending plaintiff have the ability to telework and a consistent shift schedule. ROI at 113, attached hereto as Exhibit 16. Mr. Walton informed Mr. Muhammad that these letters did not specifically address the schedule requested by Plaintiff, but Mr. Walton suggested that Plaintiff may benefit from a set schedule. ROI at 44, attached hereto as Exhibit 17. Mr. Muhammad met with Plaintiff to discuss his scheduling requests. *Id*.

On November 8, 2016, Mr. Muhammad determined that Plaintiff's permanent schedule would be four ten hour days from 6:30 am to 5:00 pm, Tuesday through Friday, with Mondays off, and Wednesdays being the only day in the office. *Id*. This arrangement was to go into effect in two weeks, and the Agency would revisit the arrangement in sixty days. *Id*. Mr. Walton informed Mr. Muhammad that he (Mr. Walton) believed this schedule was "more than fair and his [Plaintiff's] doctor does not state that it is not possible for him to come in to the office." ROI at 293, attached hereto as Exhibit 18.

On February 22, 2017, Ms. Corona and Mr. Muhammad revisited Plaintiff's schedule in a meeting with Plaintiff. Decl. of V. Muhammad, ROI at 270, Ex. 1. Mr. Muhammad and Ms. Corona determined that Plaintiff's schedule was not sustainable because Monday was the busiest day for the service desk and Plaintiff had not provided medical documentation supporting his request to have Mondays off. *Id*.; Decl. of A. Corona, ROI at 202-03, Ex. 2. Ms. Corona did not say before or during this meeting that she was taking away Plaintiff's Mondays because he filed an EEOC complaint, *id*. at 212, Ex. 2, and Mr. Muhammad did not hear her make such a statement. Decl. of V. Muhammad, ROI at 278, Ex. 1. During a telephone conference held on February 24,

2017, Plaintiff was informed that his compressed work schedule was no longer available due to the impact on the service desk and APHIS employees. ROI at 26, attached hereto as Exhibit 19. The Agency, however, offered: a set schedule of Monday through Friday from 6:30 am to 3:00 pm, no late shift or on-call requirements, to review his seating in Riverdale, and a quiet workspace if needed by Plaintiff when he was in the office. *Id.* On March 2, 2017, the Agency revised his schedule such that Plaintiff teleworked five days a week on a permanent schedule of 6:30 am to 3:00 pm with no late shift (11:30 am to 8:00 pm) requirement, and no on-call requirement in the event of emergencies. ROI at 145, attached hereto as Exhibit 20.

The Agency could not allow Plaintiff to work a maxi-flex schedule, which would have allowed him to work at his convenience to make up for scheduled hours that he missed for his medical appointments. That's because the Agency needed to have its call center specialists on a set schedule to ensure adequate coverage for incoming IT calls, especially at the beginning of the week when call volume was the highest. Decl. of V. Muhammad, ROI at 270, Ex. 1.

### B. The Agency Had Legitimate, Non-Discriminatory Justifications For Auditing Plaintiff's Time And Attendance Records.

The Agency's decision to undertake a review of Plaintiff's timekeeping records in the spring of 2017 was the result of legitimate, non-discriminatory managerial discretion. Plaintiff alleges that the Agency undertook a six-month audit of his time and attendance records as a result of a supervisor being unable to find Plaintiff on March 1, 2017 when Plaintiff was scheduled to be at work. Compl. ¶ 21. Conducting a review of an employee's time and attendance records after such an incident is a legitimate and reasonable managerial decision, especially when that employee works at a service desk that must be staffed to answer incoming calls for IT assistance. Plaintiff further alleges that the Agency provided him the results of the audit and afforded him an

opportunity to provide his responses. *Id.* Proposing a short suspension is not unreasonable when an audit reveals unauthorized employee absences.

As such, the agency's proffered reasons for the claimed adverse employment actions were legitimate and nondiscriminatory and were not motivated by discriminatory animus.

### C. Plaintiff Cannot Show That The Agency's Legitimate, Nondiscriminatory Reasons Are A Pretext For Race Or Disability Discrimination Or Retaliation.

Plaintiff cannot show that the Agency's explanation for its actions are pretext for race or disability discrimination or retaliation.

It is well-established that "[u]nder the McDonnell Douglas framework, in order to survive a motion for summary judgment, the plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action." *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)), *cert. denied*, 543 U.S. 876 (2004). A Title VII plaintiff must meet a high bar to show pretext: "In other words, '[i]t is not enough. . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Reeves*, 530 U.S. at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519) (emphasis in original).

Plaintiff cannot meet this heavy burden here. Plaintiff cannot show by a preponderance of the evidence that the Agency's legitimate, nondiscriminatory reasons for its actions were pretextual. Plaintiff's "own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons" for his supervisors' actions concerning his schedule and timekeeping records. *Williams v. Cerberonics, Inc.,* 871 F. 2d 452, 456 (4th Cir. 1989). Accordingly, Defendant is entitled to summary judgment on Plaintiff's discrimination and retaliation claims.

## IV. THE COURT SHOULD DISMISS, OR ALTERNATIVELY, GRANT SUMMARY JUDGMENT FOR DEFENDANT CONCERNING PLAINTIFF'S REASONABLE ACCOMMODATION CLAIM.

Plaintiff alleges that the Agency failed to accommodate his disability when it did not grant him the precise scheduling accommodations he requested. Plaintiff's claim fails because Plaintiff cannot demonstrate that the Agency failed to offer a reasonable accommodation.

To state a claim under the Rehabilitation Act for failure to accommodate, a plaintiff must show that (1) he has a disability; (2) his employer was aware of his disability; (3) with reasonable accommodations he was otherwise qualified to perform the essential functions of the employment position in question; and (4) his employer refused to make such reasonable accommodations. *Lewis v. Gibson*, 621 Fed. Appx. 163, 164 (4th Cir. 2015), *cert. denied sub nom.* 136 S. Ct. 840 (2016) (citing *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)).[5]

As a threshold matter, "only persons who are 'qualified' for the job in question may state a claim for discrimination." *Tyndall v. Nat'l Educ. Centers, Inc.*, 31 F.3d 209, 212 (4th Cir. 1994); *see also Wilson*, 717 F.3d at 345 (quoting 42 U.S.C. § 12111(8)) ("A 'qualified individual' is 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position.'"). Assessing whether an individual is qualified is a two-part inquiry: (1) can the individual perform the essential functions of the job in question; and (2) if not, would reasonable accommodations made by his employer enable him to perform those functions. *See Sch. Bd. of Nassau Cnty. v. Arline,* 480 U.S. 273, 287 n. 17 (1987); *Myers v. Hose,* 50 F.3d 278, 281-82 (4th Cir. 1995).

---

[5] If the plaintiff proves the elements of her failure-to-accommodate claim, the employer may avoid liability by showing "that the proposed accommodation will cause undue hardship in the particular circumstances." *Reyazuddin v. Montgomery Cnty.,* 789 F.3d 407, 414 (4th Cir. 2015) (internal quotation marks and citation omitted).

"Reasonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii); *see also* 42 U.S.C. § 12111(9). In other words, "[i]n order to be reasonable, the accommodation must be effective (i.e., it must address the job-related difficulties presented by the employee's disability), and it must allow the employee to attain an equal level of achievement, opportunity, and participation that a non-disabled individual in the same position would be able to achieve." *Fleetwood v. Harford Sys., Inc.*, 380 F. Supp. 2d 688, 699 (D. Md. 2005) (internal quotation marks omitted). Notably, "an employer is not obligated to provide a qualified individual with the accommodation of the employee's choice upon demand; the employer must only provide a reasonable accommodation." *Dahlman v. Tenenbaum*, No. DKC-10-2993, 2011 WL 3511062, at *13 (D. Md. Aug. 9, 2011). "An employer is not required to grant even a reasonable accommodation unless it would enable the employee to perform *all* of the essential functions of her position." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015) (emphasis in original).

Here, assuming for purposes of this motion that Plaintiff was a qualified individual with a disability, Plaintiff cannot demonstrate that the Agency refused to provide a reasonable accommodation. Indeed, Plaintiff concedes that the Agency granted his request, at least in part, by providing full-time telework. Compl. ¶ 19. Plaintiff's supervisors carefully considered Plaintiff's requests for special accommodations, and endeavored to find solutions that worked for both Plaintiff and the Agency. Plaintiff's supervisors met with Plaintiff to discuss his needs, and they consulted Mr. Walton on the appropriate accommodations for Plaintiff.

As of early 2017, Plaintiff was still working the temporary schedule (authorized on November 8, 2016) consisting of four ten-hour days, Mondays off, and three days of telework.[6] *See* ROI at 44, Ex. 17. In February 2017, the Agency determined that Plaintiff's schedule was not sustainable in light of its staffing needs for the IT service desk and Plaintiff's failure to provide medical documentation supporting his request to have Mondays off or his home designated his permanent duty station. Decl. of V. Muhammad, ROI at 270, Ex. 1. In light of Plaintiff's accommodation requests, the Agency, offered Plaintiff on February 24, 2017, a set schedule of Monday through Friday from 6:30 am to 3:00 pm, no late shift or on-call requirements, and a quiet workspace in the Riverdale Facility if needed by Plaintiff when he was in the office. ROI at 26, Ex. 19. The Agency then determined that it could do better. On March 2, the Agency offered Plaintiff five days a week of telework on a permanent schedule of 6:30 am to 3:00 pm with no late shift or on-call requirements. ROI at 145, Ex. 20. The Agency could not permit maxi-flex scheduling as it needed Plaintiff on a set schedule to ensure appropriate staffing of the service desk. *See* Decl. of V. Muhammad, ROI at 270, Ex. 1.

---

[6] This Court cannot consider the Agency's actions in response to Plaintiff's accommodation requests before November 27, 2016. *See* Section I, *supra*. Even if the Court had jurisdiction to consider this conduct, it would conclude that Plaintiff cannot demonstrate a failure to accommodate. In response to Plaintiff's September 2, 2016 request, the Agency granted Plaintiff a compressed work schedule from Tuesday to Friday with Mondays off so Plaintiff could attend group therapy on Mondays. ROI at 29, Ex. 10. The Agency informed Plaintiff that his schedule would revert back to the standard five day a week schedule upon the completion of his twelve week therapy program unless he submitted additional medical documentation to support his requests for Mondays off. *Id*. The Agency did not grant Plaintiff's request to designate his home as his permanent duty station, but the Agency allowed telework and an alternate work location in the building if Plaintiff required a work space with less traffic or noise. *Id*. The Agency also permitted Plaintiff a permanent shift of 7:30 am to 6:00 pm. *Id*.

In November 2016, Mr. Muhammad determined that Plaintiff's schedule would be four ten hour days from 6:30 am to 5:00 pm, Tuesday through Friday, with Mondays off, and Wednesdays being the only day in the office. ROI at 44, Ex. 17. The Agency informed Plaintiff that it would revisit his schedule in 60 days to see if needs were being met. *Id*.

To the extent Plaintiff takes issue with the Agency's refusal of his request for Mondays off or maxi-flex scheduling, the Agency "may reasonably accommodate an employee without providing the exact accommodation that the employee requested." *Reyazuddin,* 789 F.3d at 415. The Agency is not obligated to rubberstamp an employee's special accommodation request. *See id.* Indeed, the Agency must be allowed to assess whether the accommodation is effective. *See Fleetwood*, 380 F. Supp. 2d at 699. In *Shiring v. Runyon*, 90 F.3d 827 (3d Cir. 1996), the Third Circuit held that, even though the Postal Service temporarily accommodated a letter carrier's foot disability by putting him on light duty, the Postal Service was not required to maintain such a position as a reasonable accommodation under the Rehabilitation Act. *Id.* at 831. The Third Circuit dismissed the letter carrier's Rehabilitation Act claim because he ultimately was not able to perform the essential duties of his letter carrier position (i.e., delivering mail), and the light duty position had been created by the Postal Service to give Shiring something to do temporarily. *Id.* This Court has found that an employer is not required to accommodate a disability by allowing the disabled worker to work full-time at home. *See, e.g., Nanette v. Snow*, 343 F. Supp. 2d 465, 474 (D. Md. 2004), *aff'd* 143 Fed. Appx. 551 (4th Cir. 2005); *see also Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 544-45 (7th Cir. 1995). Moreover, the Agency is not required to offer a reasonable accommodation if it would cause undue hardship on the agency. *Reyazuddin,* 789 F.3d at. 414.

Here, the Agency engaged in an interactive process with Plaintiff concerning his scheduling requests. *See Haneke v. Mid–Atlantic Capital Mgmt.*, 131 Fed. Appx. 399, 400 (4th Cir. 2005) ("Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation."). The Agency allowed Plaintiff telework and a special Tuesday through Friday schedule when he had medical

documentation supporting his request for Mondays off. Even when Plaintiff's medical documentation no longer supported his Mondays off, the Agency granted him a sixty-day trial period where he could work Tuesdays through Friday. In light of the needs of the service desk, this accommodation proved unworkable for the Agency, and Plaintiff was instead permitted telework five days a week. This accommodation was still in line with what Plaintiff's medical providers had recommended in light of Plaintiff's PTSD even if not the precise accommodation requested by Plaintiff, which the Rehabilitation Act does not require agencies provide. *See* ROI at 419, 116, 113, Exs. 14-16. Given the needs of the service desk, the Agency could not permit Plaintiff's request for maxi-flex scheduling to make up missed hours at his leisure, but such a request is unreasonable as a matter of law. *See, e.g., Doak v. Johnson*, 19 F. Supp. 3d 259, 276 (D.C. Cir. 2014) (finding plaintiff's request to make up missed time on weekends to be an "open-ended 'work whenever you want'" schedule that was unreasonable accommodation as a matter of law). As such, this Court should dismiss, or alternatively, grant summary judgment for Defendant on Count III.

## CONCLUSION

WHEREFORE, the Defendant requests that the Court grant its Motion and dismiss the Complaint, or in the alternative, enter summary judgment in favor of the Defendant.

Respectfully submitted,

Robert K. Hur
United States Attorney

By:  _____/ s /_____

Rebecca A. Koch
Assistant United States Attorney
Bar number: 802108
6406 Ivy Lane, Suite 800
Greenbelt, MD 20770
Telephone: (301) 344-4233
Facsimile: (410) 962-2310
rebecca.koch@usdoj.gov
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that on June 7, 2018, a copy of the foregoing Memorandum in Support of Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment was served on counsel of record by the Court's CM/ECF system.

/s/
_____
Rebecca A. Koch
Assistant United States Attorney