IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RECARDO TERRY,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | CIVIL NO. JKB-18-31 |
| | * | |
| **SONNY PERDUE,** | * | |
| **SECRETARY, UNITED STATES** | | |
| **DEPARTMENT OF AGRICULTURE** | * | |
| | * | |
| **Defendant** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Recardo Terry ("Plaintiff") brought this action against his employer, Sonny Perdue, the Secretary of the United States Department of Agriculture ("Defendant"), alleging race and disability discrimination, failure to accommodate his disability, and retaliation by his supervisors for engaging in protected activities.

Now pending before the Court is Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, filed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56. (ECF No. 11.) The issues have been briefed (ECF Nos. 11-1, 16, 21), and no hearing is required, *see* Local Rule 105.6 (D. Md. 2016). For the reasons explained below, the motion will be reviewed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and will be granted in part and denied in part.

## I. Overview[1]

Plaintiff is an African American and disabled male who works as an Information Technology Specialist at the United States Department of Agriculture (the "Agency") in Riverdale, Maryland. (Compl., ECF No. 1. ¶ 6.) As an IT Specialist, Plaintiff is responsible for answering calls of Agency clients for IT-related assistance. (*Id.* at ¶ 9.) Plaintiff's first line supervisor is Vernon Muhammad, an African American male and an IT Specialist Supervisor, and his second level supervisor is Ann Corona, a Caucasian female and the Agriculture Technical Advisory Committee Department Manager. (*Id.* ¶ 6.) Plaintiff began his employment at the Agency in 2014 and remains employed there today. (*Id.*)

Plaintiff suffers from chronic low back pain, anxiety, and Post-Traumatic Stress Disorder (PTSD). (*Id.* ¶ 7.) Plaintiff's treatment for his conditions includes regular therapy sessions, most of which take place on Mondays. (*Id.*) In order to attend these sessions, Plaintiff submitted a variety of requests to the Agency regarding his employment. (*See id.* ¶¶ 13-19.) Specifically, on September 2, 2016, Plaintiff submitted a request to the Agency's Reasonable Accommodation Representative, Dave Walton, in which he asked to have Mondays off and to have a set schedule. (*Id.* ¶ 13). In addition, Plaintiff requested that his home be designated as his permanent work station.[2] (*Id.*) The Agency largely approved Plaintiff's request; they agreed to give him Mondays off, a compressed set schedule Tuesday through Friday, and the ability to telework three days a week. (*Id.*) After one month, however, the Agency removed him from this schedule. (*Id.*) Therefore, on October 27, 2016, Plaintiff submitted a second, identical request. (*Id.* ¶ 14.) The Agency similarly approved this request; that is, they agreed to all of his proposed terms with the exception of his home being designated as his permanent duty station. (*Id.*)

---

[1] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

[2] Plaintiff's request to telework full time was seemingly unrelated to his Monday therapy sessions.

According to Plaintiff, Mr. Muhammad informed him that the Agency could not approve his request to telework full time because his supervisors did not have a letter from his doctor. (*Id.*) By contrast, Plaintiff alleges that three of his Caucasian co-workers were allowed to work from home permanently. (*Id.* ¶ 16.) Plaintiff filed an EEO complaint in January 2017, in which he alleged that he was being subjected to discrimination based on his race and disability by his supervisors. (*Id.* ¶ 15.)

In late February 2017, Plaintiff met with his supervisors to discuss his accommodation requests. (*Id.* ¶¶ 16, 17.) At that time, Ms. Corona cancelled Plaintiff's existing compressed schedule—which allowed him Mondays off—and assigned him a set schedule five days a week. (*Id.*) Ms. Corona stated that she was taking away his Mondays off because of the complaint he filed. (*Id.* ¶ 17.) Further, Ms. Corona denied Plaintiff's alternative request for a maxi-flex schedule, which would have allowed him to work additional hours to make up for time missed on Mondays to attend his therapy sessions. (*Id.* ¶¶ 17, 18.) According to Plaintiff, almost all employees in his division work on a maxi-flex schedule. (*Id.* ¶ 18.) As a result of these scheduling changes, Plaintiff had to take leave on Mondays to attend his therapy or other medical appointments. (*Id.* ¶¶ 17, 18.)

Along with these scheduling changes, Plaintiff and his supervisors also discussed his request to telework full time in their February, 2017 meetings. (*Id.* ¶¶ 16, 17.) At that time, his supervisors maintained that Plaintiff was required to come into the office at least one day per pay period. (*Id.*) A few days later, however, his supervisors changed their position and granted Plaintiff's request to telework full time. (*Id.* ¶ 19.)

In April 2017, the Agency conducted a six-month audit of Plaintiff's time and attendance records. (*Id.* ¶ 21.) Plaintiff was the only IT Specialist subject to an audit. (*Id.*) According to

Plaintiff, Mr. Muhammad informed him that the Agency chose to conduct the audit after an incident on March 1, 2017, when a supervisor was unable to locate Plaintiff even though he was scheduled to be at work. (*Id.* ¶ 21.) The audit revealed discrepancies in Plaintiff's time and attendance records, but the results were unreliable because the audit did not account for days that Plaintiff was working offsite. (*Id.*) Because of the results of the audit, Ms. Corona proposed to suspend Plaintiff for fourteen days.[3] (*Id.*)

Plaintiff initiated the EEO process on January 11, 2017, at which time he contacted the Agency's EEO Counselor regarding the Agency's alleged discrimination and failure to provide reasonable accommodations due to his race and disability. (Mot. Dismiss Ex. 5, ECF No. 11-7.)[4] The Agency was unable to resolve the matter through the informal EEO process and, therefore, the Agency issued a Notice of Right to File to Plaintiff on February 22, 2017. (*Id.*) In turn, Plaintiff filed a formal complaint on March 3, 2017, and the Agency then conducted an investigation. (*Id.* at Ex. 9, ECF No. 11-11.) The Agency issued a Final Agency Decision on October 4, 2017, in which it concluded that the Agency had reasonably accommodated Plaintiff's disabilities and did not act discriminatorily. (*Id.*)

Plaintiff filed the instant suit on January 3, 2018. (Compl.) Plaintiff asserts claims against Defendant for racial discrimination (Count I) in violation of Title VII of the Civil Rights Act of 1964, codified, as amended, at 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); retaliation (Count II), in violation of Title VII; failure to accommodate (Count III), in violation of the Rehabilitation Act of 1973, codified as amended, at 29 U.S.C. §§ 791 *et seq.* ("Rehabilitation Act"); and disability discrimination (Count IV), in violation of the Rehabilitation Act. (*See id.*)

---

[3] Plaintiff does not allege that he was actually suspended.
[4] Defendant attached a copy of Plaintiff's EEO complaint as an exhibit to its instant Motion. (Mot. Dismiss Ex. 6, ECF No. 11-8.) Plaintiff does not dispute the authenticity of the EEO complaint, and therefore the Court considers Defendant's attachment to be an accurate copy.

Defendant filed the pending Motion to Dismiss or, in the alternative, for Summary Judgment on June 7, 2018 (ECF No. 11); Plaintiff opposed Defendant's Motion (ECF No. 16), and Defendant replied (ECF No. 21). The matter is ripe for decision.

## *II. Legal Standard*

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject-matter jurisdiction. The Plaintiff bears the burden of proving subject-matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (noting challenge may be either facial, i.e., complaint fails to allege facts upon which subject-matter jurisdiction can be based, or factual, i.e., jurisdictional allegations of complaint are not true); *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) ("When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff."). In the case of a factual challenge, it is permissible for a district court to "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg*, 945 F.2d at 768 (citing *Adams*, 697 F.2d at 1219).

While Rule 12(b)(1) is directed toward threshold jurisdictional defects, Rule 12(b)(6) is implicated when the plaintiff fails to state a plausible claim for relief. In analyzing a Rule 12(b)(6) motion, the court must view all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

Defendant moves in the alternative for summary judgment, in support of which they proffer several documents. "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure," *Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 542 (D. Md. 2012), which provides that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to *and not excluded by* the court, the motion must be treated as one for summary judgment under Rule 56," Fed. R. Civ. P. 12(d) (emphasis added). "Nevertheless, a district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings . . . or to reject it or simply not consider it.'" *Sager*, 855 F. Supp. 2d at 542 (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004)). Where, as here, the Court has not yet entered a scheduling order and Plaintiff has had no opportunity whatsoever to undertake any discovery, the Court is loath to force Plaintiff into a summary-judgment posture. *Cf. Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) ("Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)); *Minter v. Wells Fargo Bank, N.A.*, 593 F. Supp. 2d 788, 792 (D. Md. 2009) ("As a general rule, summary judgment is not appropriate prior to the completion of discovery."). Accordingly, the Court will decline to exercise its discretion under Rule 12(d) and will instead evaluate Defendant's Motion pursuant to Rules 12(b)(1) and 12(b)(6), excising the supplemental exhibits from its consideration.

## III. Analysis

The Court will first address Defendant's argument that Plaintiff failed to exhaust his discrimination and accommodation claims with respect to any conduct before November 27, 2016. (*See* Mot. Dismiss Mem. Supp. at 1-2, ECF No. 11-1 at 3-4.) Then, the Court will address Defendant's argument that Plaintiff fails to state a plausible claim under either Title VII or the Rehabilitation Act. (*See id.*)

### A. Exhaustion

This Court lacks subject matter jurisdiction over Title VII and Rehabilitation Act claims for which a plaintiff has failed to exhaust administrative remedies. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013); *Snead v. Board of Educ. of Prince George's Cty.*, 815 F. Supp. 2d 889, 894 (D. Md. 2011) (stating plaintiff must exhaust administrative remedies prior to filing a lawsuit alleging Rehabilitation Act violations). To exhaust those remedies, the Equal Employment Opportunity Commission (EEOC) has promulgated regulations that require, among other things, that a federal employee consult with an EEO counselor prior to filing a discrimination lawsuit. Specifically, he "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *See* 29 C.F.R. § 1614.105(a). This "matter" could be one incident in a long line of actions, such as that characterizing a hostile work environment claim, *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117-18 (2002) (explaining continuing violation doctrine), or it could be a discrete action, like a demotion.

Defendant argues that Plaintiff failed to exhaust his administrative remedies with regard to his discrimination and accommodation claims insofar as he alleges discriminatory conduct

7

before November 27, 2016, because he did not consult an EEO counselor within forty-five days of such events. (Mot. Dismiss Mem. Supp. at 9, ECF No. 11-1 at 11.) The Court rejects this argument because the instant complaint does not rely on discrete discriminatory acts that occurred outside of the 45-day period, such as a demotion or termination; rather, it alleges ongoing discriminatory conduct that occurred within the statutory period. *See Morgan*, 536 U.S. at 114 (referring to "discrete acts" as acts such as "termination, failure to promote, denial of transfer, or refusal to hire"). *See also Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 626 (E.D. Va. 2011) (holding that the court had subject matter jurisdiction to consider incidents of harassment that occurred outside of limitations period in evaluating employee's Title VII claim where a reasonable investigation of the alleged incidents that occurred within the statutory period might have uncovered such previous acts). That is, although the initial allegedly discriminatory conduct took place outside of the forty-five day period—*i.e.*, the Agency's denial of Plaintiff's requests to telework full time in September and October of 2016—Plaintiff claims that this practice continued for months after that time. (Compl. ¶¶ 13, 14, 16.) Indeed, Plaintiff alleges that he was not allowed to telework full time until March 2017, even though four of his Caucasian co-workers had been granted the same privilege during that time. (*Id.* at ¶¶ 16, 19.) Thus, because Plaintiff does not allege a discrete act of discrimination that falls outside of the statute of limitations period but rather accuses Defendant of subjecting him to an ongoing pattern of discrimination, and because Plaintiff properly complained about this conduct to the EEO, the Court finds that Plaintiff satisfied the exhaustion requirement necessary to proceed with the instant suit.[5] (*See* Mot. Dismiss Ex. 6, ECF No. 11-8.)

---

[5] Further, Plaintiff's EEO complaint included all of the allegations now before this Court. *See Evans v. Techs. Applications & Serv. Co.*, 80 F. 3d 954, 963 (4th Cir. 1996) ("Only those discrimination claims stated in the initial

8

## B. *Title VII—Discrimination (Count I)*

Title VII makes it unlawful to discriminate in employment on the basis of race, color, religion, sex or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). To establish a claim for discrimination under Title VII, Plaintiff may proceed through either of two methods. First, he may demonstrate "through direct or circumstantial evidence" that his race "motivated the employer's adverse employment decision." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). Alternatively, he may "proceed under a 'pretext' framework"—commonly referred to as the *McDonnell Douglas* approach—"under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually pretext for discrimination." *Id.* at 285. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)). These two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*; at the motion to dismiss stage, however, they merely serve to inform a court's evaluation of the allegations. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002) (stating "[t]he prima facie case ... is an evidentiary standard, not a pleading requirement.").

Plaintiff has not alleged any direct evidence of discrimination. Therefore, the Court will analyze Plaintiff's allegations in light of the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973).

To establish a prima facie case of discrimination under Title VII, a plaintiff must allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class."

---

charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.").

9

*Coleman*, 626 F.3d at 190. "While a plaintiff [in an employment discrimination case] is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, [f]actual allegations must be enough to raise a right to relief above the speculative level." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd* 566 U.S. 30 (2012) (quoting *Twombly*, 550 U.S. at 544).

As to the first and second elements, Defendant does not dispute that Plaintiff has sufficiently alleged that he is a member of a protected class and that his job performance was satisfactory. (*See* Mot. Dismiss Mem. Supp. at 10-15, ECF No. 11-1 at 12-17.) Rather, Defendant argues that the Plaintiff fails to allege the third and fourth elements of a prima facie case. (*See id.*)

### *i. Adverse Employment Action*

In order to prevail on a discrimination claim under Title VII, "the existence of some adverse employment action is required." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). An adverse employment action is a discriminatory act that "adversely affects the terms, conditions, or benefits of a plaintiff's employment." *Id.* Of import here, an adverse employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Typical adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). However, "not everything that makes an employee unhappy is an actionable adverse action." *Settle v.*

*Baltimore Cty.*, 34 F. Supp. 2d 969, 989 (D. Md. 1999) (citation omitted), *aff'd*, 203 F.3d 822 (4th Cir. 2000), *and aff'd sub nom. Harris v. Earp*, 203 F.3d 820 (4th Cir. 2000).

Plaintiff alleges that Defendant knowingly and intentionally subjected him to disparate treatment based on his race when he: (1) denied Plaintiff's requests to telework full time; (2) cancelled Plaintiff's compressed work schedule; (3) denied Plaintiff's request for a maxi-flex schedule; and (4) subjected Plaintiff to an audit of his time and attendance records and proposed a fourteen day suspension because of the results of the audit. (*See* Compl. ¶ 27.) However, none of these actions constitute adverse employment actions for purposes of Plaintiff's discrimination claim. Indeed, courts in analogous cases have held that an employer's refusal to allow a flex schedule or telework does not constitute an adverse employment action. *See Dailey v. Lew*, Civ. No. GLR-15-2527, 2016 WL 1558150, at *5-6 (D. Md. Apr. 18, 2016) (finding no adverse action where the defendant suspended the plaintiff's telework arrangement and imposed leave restrictions on plaintiff, including requiring her to request leave without pay and to provide documentation from a medical provider for absences due to illness), *aff'd* 670 F. App'x 142 (4th Cir. 2016); *Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (holding that removal from an alternate work schedule was not an adverse employment action); *Carter v. Va. Dep't of Game & Inland Fisheries*, Civ. No. MHL-16-0661, 2017 WL 4413192, at *13 (E.D. Va. Sept. 29, 2017) ("By alleging that [the Defendant] refused to allow her to work a flex schedule or telecommute, [the Plaintiff] fails to allege that she suffered an adverse employment action to support her race discrimination claim.").[6] *Cf. Lee v. Mattis*, Civ. No. PX-17-2836, 2018 WL 3439261, at *9 (D. Md. July 17, 2018) (finding plaintiff sufficiently pled adverse

---

[6] Other courts have similarly refused to find a denial of an alternative work schedule to be an adverse action. *See e.g., Hunter v. District of Columbia*, 905 F. Supp. 2d 364, 373 (D. D.C. 2012) (concluding that the defendant's denial of plaintiff's request for an alternative work schedule of Monday through Thursday with Fridays off did not rise to the level of an adverse employment action).

employment action where he alleged refusal to allow telecommuting in addition to excessive criticism, disparate assignment of overtime work, and denial of leave). The same is certainly true in the instant case where Plaintiff concedes that Defendant consistently allowed him to telework three days a week, and then ultimately granted Plaintiff's request to telework full time on March 2, 2017. (*See* Compl. ¶¶ 13, 14, 19.) Plaintiff alleges no change in compensation, job title, level of responsibility, or opportunity for promotion as a result of these actions, but only that he had to use annual leave to attend his medical appointments as a result of his schedule change. Thus, these actions do not constitute adverse actions for purposes of Plaintiff's discrimination claim.

Similarly, Defendant's audit of Plaintiff's time records and the resulting proposed fourteen day suspension do not constitute adverse employment actions. Even under the "lower bar" applicable to retaliation claims under Title VII, none of the following constitutes an adverse employment action: "'an Attendance Warning,' a verbal reprimand, a 'formal letter of reprimand,' or 'a proposed termination.'" *Wonasue v. Univ. of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 492 (D. Md. 2013) (quoting *Rock v. McHugh*, 819 F. Supp. 2d 456, 470-71 (D. Md. 2011)). *See also Coates v. Vilsack*, Civ. No. PWG-12-1787, 2015 WL 1013402, at *6 (D. Md. Mar. 6, 2015) ("[N]either the letter of reprimand nor the letter or proposed suspension is an adverse employment action on its own."); *Simmington v. Gates*, Civ. No. DKC-08-3169, 2010 WL 1346462, at *13 (D. Md. Mar. 30, 2010) (questioning plaintiff about her attendance is not an adverse action for purposes of retaliation claim); *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003) (holding that proposed suspension does not constitute an adverse action for retaliation claim). Plaintiff does not allege that he suffered any detrimental effect as a result of

the audit or the proposed suspension and, therefore, these actions do not constitute an adverse employment actions.

Because Plaintiff fails to allege an adverse employment action, the Court dismisses Plaintiff's racial discrimination claim.[7]

### C. *Title VII—Retaliation (Count II)*

Title VII prohibits an employer from "discriminat[ing] against any individual" because that individual "opposed any practice made an unlawful employment practice by this subchapter," or "made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C.A. § 2000e–3(a). As with discrimination claims, plaintiffs may prove retaliation either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of *McDonnell Douglas*. *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015). Whether a plaintiff proceeds by direct evidence or the *McDonnell Douglas* burden-shifting method, he must show (1) that he engaged in protected activity and that, (2) because of this, (3) his employer took an adverse employment action against him. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 577 (4th Cir. 2015).

Plaintiff sufficiently alleges that he engaged in protected activities when he requested reasonable accommodations for his disabilities, reported that he was being treated differently than his Caucasian colleagues who were permitted to telework, and filed an EEO complaint with the Agency. (Compl. ¶ 33.) Defendant argues, however, that Plaintiff fails to sufficiently allege

---

[7] Without conducting a full analysis, the Court notes that Plaintiff's assertions that "four of [his] Caucasian co-workers were allowed to telework from their homes five days a week" and that "three Caucasian employees were allowed to work from home permanently" suffice to allege different treatment from similarly situated employees outside his protected class for purposes of his racial discrimination claim. (*See* Compl. ¶¶ 14, 16.)

that his employer acted adversely against him. (*See* Mot. Dismiss Mem. Supp. at 22, ECF No. 11-1 at 24.) The Court disagrees.

The adverse action element of a retaliation claim is different from that of a discrimination claim. Unlike a discrimination claim under Title VII, a plaintiff need not establish an "ultimate employment decision" to make out a retaliation claim; rather, he need only allege that he suffered an action that was "materially adverse," meaning that the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). Accepting as true Plaintiff's allegations that his supervisor cancelled his Mondays off and denied his request for a maxi-flex schedule, such actions would be sufficient to dissuade a reasonable worker from making a discrimination charge.[8] *See Johnson*, 2014 WL 1281602, at *20 (finding adverse employment action where plaintiff alleged that her medical suspension resulted in a significant reduction in her income due to her ineligibility for overtime and secondary employment); *Rollins v. Verizon Maryland, Inc.*, Civ. No. RDB-09-2379, 2010 WL 4449361, at *7 (D. Md. Nov. 5, 2010) (observing that, in the context of a Title VII retaliation claim, "[n]umerous courts have held that a denial of the opportunity to work overtime constitutes retaliatory conduct").

Finally, as to the causal connection between the protected activity and the adverse action, Plaintiff has alleged direct evidence of retaliation. Specifically, Plaintiff asserts that his

---

[8] Plaintiff also cites Defendant's denial of his requests to telework and the audit of his time and attendance records in support of his retaliation claim. (*See* Compl. ¶ 34.) However, neither of these actions can support the instant claim. As for Defendant's denial of Plaintiff's requests to telework, the facts set out in the Complaint do not support the claim that Defendant denied Plaintiff's requests to telework after he engaged in protected activities. To the contrary, Plaintiff alleges that Defendant consistently *allowed* him to telework all but one day per pay cycle throughout the relevant time period and, indeed, even granted Plaintiff's request to telework full time in March 2017. (*See* Compl. ¶¶ 13-19.) Thus, there was no adverse action taken after Plaintiff engaged in protected activities. As for Defendant's audit of Plaintiff's time and attendance records, such actions do not constitute adverse actions. *See Wonasue v. University of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 492 (D. Md. 2013) (stating that a formal letter of reprimand or a proposed termination do not constitute adverse actions in a retaliation claim) (internal quotations omitted); *Simmington v. Gates*, Civ. No. DKC-08-3169, 2010 WL 1346462, at *13 (D. Md. Mar. 30, 2010) (questioning plaintiff about her attendance was not an adverse action for purposes of retaliation claim).

14

supervisor, Ms. Corona, stated that she was taking away his Mondays off because of the complaint Plaintiff filed. (*Id.* at ¶ 17.) Because this alleges a causal connection between the protected activity and the Defendant's removal of the Plaintiff's Mondays off, Plaintiff's allegations of retaliation are sufficient to survive the instant motion to dismiss.

### D. *Rehabilitation Act—Failure to Accommodate (Count III)*

Plaintiff also claims that Defendant failed to accommodate his disabilities in violation of the Rehabilitation Act. (Compl. ¶ 40.) To establish a claim for failure to accommodate under the Rehabilitation Act, a plaintiff must show that (1) he has a disability; (2) his employer knew of the disability; (3) with reasonable accommodations he is otherwise qualified to perform the essential functions of the employment position in question; and (4) his employer refused to make such reasonable accommodations. *Lewis v. Gibson*, 621 F. App'x 163, 164 (4th Cir. 2015), *cert. denied sub nom. Lewis v. McDonald*, 136 S. Ct. 840 (2016).

As to the first and second elements, Plaintiff has alleged that he suffers from chronic low back pain, anxiety, and PTSD, and that these conditions hinder his ability to perform major life activities (*See* Compl. ¶¶ 7-13). *See* 29 U.S.C. § 705(20)(B) (defining an "individual with a disability"). Further, Plaintiff alleges that Defendant knew of his disabilities. (*Id.* at ¶¶ 9-13.)

As to the third element, however, Plaintiff fails to plausibly allege that the requested accommodations were reasonable. "Reasonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). "Not every job-related requested by a disabled employee that is denied by his employer will subject the employer to liability for failure to provide a reasonable accommodation." *See Fierce v.*

*Burwell*, 101 F. Supp. 3d 543, 550 (D. Md. 2015). Rather, the denial of a request by a disabled employee could only subject the employer to liability if there is "a causal relationship between the disability and the request for accommodation," or, in other words, if "the requested accommodation was *necessary* in order for [him] to perform the essential functions of [his] job." *Id.* (quoting *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997) (emphasis added)).

Plaintiff fails to allege that the requested accommodations were needed to perform the essential functions of his position. *See Fierce*, 101 F. Supp. 3d at 550. As to his request for Mondays off or, in the alternative, a maxi-flex schedule, Plaintiff only alleges that, as a result of the denial of these requests, he was required to take leave every Monday to attend his therapy sessions; nowhere does he allege that his disabilities required these accommodations.[9] (*See* Compl. ¶ 18.) Similarly, with respect to his request for full time telework, Plaintiff alleges that "his doctors recommended that his home be his permanent duty station" but does not set forth any other facts indicating that such an accommodation was necessary for him to perform the essential functions of his position. (*See* Compl. ¶¶ 13, 14, 16.) To the contrary, from the time that Plaintiff began his employment at the Agency in 2014 until March, 2017, Plaintiff was only allowed to telework part time. (*See id.* ¶¶ 8-21.) Plaintiff does not allege that this practice affected his ability to perform his job during that time. *See Fierce*, 101 F. Supp. 3d at 550 (holding that the employee was not denied a reasonable accommodation where her employer refused to grant her request to telework full time because, although "the Court can assume that teleworking may have helped alleviate some of Plaintiff's depression," the Plaintiff offered no

---

[9] The Court also notes that, in analogous cases, the Fourth Circuit and other courts of this District have found that allowing an employee to use leave to receive treatment constitutes a reasonable accommodation. *See Rodgers v. Lehman*, 869 F.2d 253, 259 (4th Cir. 1989) (holding that alcoholic employee should have been given the opportunity to participate in a rehabilitation program using accrued or unpaid leave, and that the defendant's refusal to allow plaintiff to use such leave was a violation of the Rehabilitation Act); *Baucom v. Potter*, 225 F. Supp. 2d 585, 592-93 (D. Md. 2002) (stating that, where the plaintiff was an alcoholic, a reasonable accommodation would have constituted the Defendant permitting the Plaintiff to use leave to obtain the treatment recommended by his physician).

16

evidence that her disability *required* her to work from home) (emphasis in original); *Davis v. Lockheed Martin Operations Support, Inc.,* 84 F.Supp.2d 707, 712 (D. Md. 2000) (holding that the employer's refusal to allow employee to work from home did not constitute failure to accommodate where her doctor stated that she would be "well-suited to work at home" but there was no evidence that the employee *needed* to work from home) (emphasis added).

Because Plaintiff fails to plausibly allege that the requested accommodations were necessary for him to perform the essential functions of his position, the Court dismisses his claim for failure to accommodate.

### E. Rehabilitation Act—Disability Discrimination (Count IV)

Plaintiff also asserts a claim for disparate treatment based on disability in violation of the Rehabilitation Act. In support of this claim, Plaintiff relies on the same conduct that underlies his racial discrimination claim under Title VII. (*See* Compl. ¶¶ 27, 47.) In turn, Defendant argues that Plaintiff's disability discrimination claim fails for the same reasons—*i.e.*, because Plaintiff fails to allege both an adverse action and sufficient facts regarding comparators. (Mot. Dismiss Mem. Supp. at 10, ECF No. 11-1 at 12.) The Court agrees.

The Rehabilitation Act proscribes discrimination against an "otherwise qualified individual with a disability ... solely by reason of her or his disability." 29 U.S.C. § 794(a). To establish a prima facie case of disparate treatment under the Rehabilitation Act, a plaintiff must show: (1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he suffered an adverse employment action because of his disability.[10] *Fierce*, 101 F. Supp. 3d at 552 (citation omitted).

---

[10] In the absence of direct evidence, the Court's analysis under the Rehabilitation Act, like Title VII, follows the *McDonnell Douglas* framework of burden shifting. *Abilt v. Central Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017).

In support of his claim for disability discrimination, Plaintiff alleges that he suffers from PTSD, anxiety, and chronic low back pain. (Compl. ¶¶ 6, 7.) Amongst other things, Plaintiff claims that his conditions limit his ability to walk or stand for short periods of time.[11] (Compl. ¶¶ 6, 7.) However, Plaintiff fails to allege that the Defendant took any adverse action against him because of his disabilities. That is, Plaintiff complains about the following actions in support of his discrimination claim: (1) Defendant's denial of Plaintiff's requests to telework full time; (2) Defendant's cancellation of Plaintiff's compressed work schedule; (3) removal of Plaintiff's Mondays off; and (4) Defendant's audit of Plaintiff's time records and the resulting proposed suspension. (Compl. ¶ 47.) However, as discussed in this Court's analysis of Plaintiff's racial discrimination claim, these actions do not constitute actionable adverse employment actions. *See Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (holding that "removal from [an] alternate work schedule" was not an adverse employment action in Title VII case). *Cf. Lynn v. Alexander*, Civ. No. RDB-07-2860, 2009 WL 10681965, at *7 (D. Md. Mar. 20, 2009) (finding adverse employment action where plaintiff alleged that she was terminated as a result of her disability).

Further, even if Plaintiff *had* sufficiently alleged an adverse employment action, he nonetheless fails to state a claim for disability discrimination because he has not identified a single employee outside of his protected class who was treated more favorably than he was. Indeed, the only allegation in the Complaint that Plaintiff was treated differently from other

---

[11] To be considered disabled within the meaning of the Rehabilitation Act, an individual must show that he suffers from a medical condition that "substantially limits" his ability to perform a "major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 490 (1999). To be "substantially limiting," an impairment must interfere with a major life activity "considerably" or "to a large degree" and the impairment must be permanent or long term. *Pollard v. High's of Baltimore*, 281 F.3d 462, 467–68 (4th Cir.2002). "Major life activities" include only those activities that are of central importance to daily life, such as, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i). Defendant does not dispute that the Plaintiff has sufficiently alleged that he was disabled. (*See* Mot. Dismiss Mem. Supp. at 23, ECF No. 11-1 at 25.)

similarly situated employees outside of his protected class is that "[f]our of Plaintiff Terry's Caucasian co-workers were allowed to telework from their homes five days a week, and at least two of those co-workers have disabilities." (Compl. ¶ 14.) This passing reference to disparate treatment is unsupported by any factual allegations and, indeed, actually undercuts Plaintiff's assertion that he was treated differently from similarly situated individuals outside of his protected class—*i.e.*, not disabled. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (stating that, in a Title VII discrimination case, "[s]uch a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it'") (citation omitted). *See also* 29 U.S.C. § 794a(a) (Rehabilitation Act applies the procedural and substantive provisions of Title VII). Under *Twombly*, such conclusory allegations are insufficient to state a claim for relief. *See* 550 U.S. at 555.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Defendant's Motion (ECF No. 11) with respect to Plaintiff's claims for racial discrimination under Title VII (Count I), failure to accommodate under the Rehabilitation Act (Count III), and disability discrimination under the Rehabilitation Act (Count IV) pursuant to Federal Rule of Civil Procedure 12(b)(6). However, the Court finds that Plaintiff has stated a plausible claim for retaliation under Title VII (Count II) and thus will deny Defendant's Motion to Dismiss with respect to that count.

DATED this 19 day of September, 2018.

BY THE COURT:

/s/ James K. Bredar
_____
James K. Bredar
Chief Judge