IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RECARDO TERRY,** | * | |
| **Plaintiff,** | * | |
| v. | * | **CIVIL NO. JKB-18-31** |
| **SONNY PERDUE, SECRETARY, UNITED STATES DEPARTMENT OF AGRICULTURE,** | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

In this federal-sector employment action, Plaintiff Recardo Terry sued Sonny Perdue, Secretary of the U.S. Department of Agriculture (the "Agency"), alleging that during his employment with the Agency, Plaintiff was subject to unlawful discrimination and retaliation. The Court previously granted Defendant's motion to dismiss Plaintiff's employment discrimination claims but denied dismissal of Plaintiff's retaliation claim. Following discovery, Defendant has now moved for summary judgment on the retaliation claim. (ECF No. 47.) The motion is fully briefed and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Defendant's motion will be granted.

*I.     Factual and Procedural Background*

The procedural history and facts are set forth in the Court's prior Memorandum Opinion (Mem. Op., ECF. No. 22) and are incorporated by reference and repeated as necessary to provide context and to resolve the pending motion. Plaintiff is an African American veteran who formerly worked as an Information Technology Specialist at the United States Department of Agriculture

in Riverdale, Maryland. (*Id.* at 2.) During the relevant time period, Plaintiff's first line supervisor was Vernon Muhammad, and his second level supervisor was Ann Corona. (*Id.*) Plaintiff suffers from chronic low back pain, anxiety, and Post-Traumatic Stress Disorder ("PTSD"). (*Id.*) Plaintiff's PTSD affects his concentration and temperament, and as a result of his condition, he sometimes experiences panic attacks. (Terry Decl., Report of Investigation ("ROI"), at 72–73.)[1]

On September 2, 2016, Plaintiff submitted a request for disability accommodations to the Agency. (Confirmation of Request for Reasonable Accommodation, ROI at 410.) He asked to have Mondays off, to be permitted to telework with his home set as his permanent duty station, and to have a set schedule with non-rotating 6:30 a.m. to 3:00 p.m. shifts. (*Id.*) The request was supported by a May 2, 2016 letter from a licensed clinical social worker with the Department of Veteran Affairs ("VA"), which noted that Plaintiff was "enrolled [in] and attending a 12 week evidence based group at the Washington, DC VA" for his PTSD on Mondays. (5/2/16 VA Letter, ROI at 112.) The request was also supported by a September 7, 2016 letter from a doctor with the VA, who noted that the ability to telework would help with Plaintiff's PTSD and that "having a consistent shift schedule would reduce his PTSD flares." (9/7/16 VA Letter, ROI at 113.)

On September 15, 2016, Mr. Muhammad sent Plaintiff an email notifying him that the Agency had approved his request in part. (9/15/16 Muhammad Email, ROI at 29.) The email explained that while Plaintiff's home would not be made his permanent duty station, he would be permitted to telework. (*Id.*) The email also stated that Plaintiff would be given a regular compressed Tuesday to Friday schedule to enable him to attend the "series of supportive group meetings" referenced in the May 2 letter. (*Id.*) However, the email noted that "[u]pon completion

---

[1] Both parties submitted excerpts of the ROI as exhibits to their briefing. For the sake of clarity and simplicity, the Court will cite directly to the ROI, rather than to those exhibits.

2

of these series of meetings" Plaintiff would "go back to the standard five day a week schedule." (*Id.*)

On September 30, 2016, Mr. Muhammad followed up with a second email. (9/30/16 Muhammad Email, ROI at 39.) He noted that Plaintiff's Tuesday to Friday schedule was an accommodation to allow Plaintiff to "attend [the] Monday sessions at the VA for the 12 weeks designated" in the May 2 letter. (*Id.*) He also informed Plaintiff that the Agency had not received further documentation indicating Plaintiff would need Mondays off permanently and that unless Mr. Muhammad or Human Resource Specialist David Walton received further documentation, Plaintiff's schedule would revert back to a regular Monday through Friday work week. (*Id.*) On October 12, Mr. Muhammad sent an additional email reminding Plaintiff: "Make sure to submit the documentation stating the need to continue the compressed work schedule by Monday Oct 17th or your schedule will revert back." (10/12/16 Muhammad Email, ROI at 40.)

In late October, Plaintiff submitted a second request for accommodation, again seeking Mondays off and to have his home set as his permanent duty station. (Terry Decl., ROI at 75.) Two additional letters from medical providers were submitted in support of the request. (10/3/16 VA Letter, ROI at 116; 10/20/16 VA Letter, ROI at 419.) The second of these letters, from Russell A. Jones, Ph.D., noted that Plaintiff had been "attending weekly individual sessions" to treat his PTSD on Monday afternoons, and "recommend[ed] that Mr. Terry continue attending weekly sessions." (10/20/16 VA Letter, ROI at 419.) However, it did not explicitly state that the weekly sessions needed to be held on Mondays, nor that Plaintiff needed to work a truncated schedule. (*Id.*) Further, while the letter indicated Plaintiff would benefit from being permitted to telework five days a week, the letter did not state that this accommodation was necessary as a medical matter. (*Id.*) Following receipt of these letters, on November 8, the Agency adjusted Plaintiff's

3

schedule so that, "effective in 2 weeks[,]" he would again have Mondays off and be authorized to telework Tuesday, Thursday, and Friday. (11/8/16 Muhammad Email, ROI at 44.) However, the Agency did require Plaintiff to be in the office on Wednesdays. (*Id.*) Further, in his email alerting Plaintiff of this second set of accommodations, Mr. Muhammad noted that the arrangement would be revisited after 60 days. (*Id.*)

On January 11, 2017, as the end of the 60-day period approached, Plaintiff contacted an Equal Employment Opportunity ("EEO") counsellor alleging discrimination and failure to provide reasonable accommodations. (EEO Mediation/ Counselor's Report, ROI at 51–54.) Plaintiff "alleged that management ha[d] discriminated against him when he was not given a reasonable accommodation of being allowed to telework 4 days a week with every Monday off." (*Id.*) The EEO counselor scheduled a mediation for February 22. In the weeks following Plaintiff's complaint to the EEO counselor, he remained assigned to work Tuesday through Friday. (Compl. ¶ 17, ECF No. 1.) According to Ms. Corona and Mr. Muhammad, the beginning of the year was too busy a time for them to revisit Plaintiff's schedule, and Ms. Corona thought it best to wait for the mediation before taking action. (*See* Corona Decl., ROI at 212; Muhammad Depo. at 66:1–9, Mot. Sum. J. Ex. 3, ECF No. 47-5.)

On February 22, 2017, EEO Counselor Lauren Hill, Designated Resolving Official Gary Washington, Ms. Corona, Mr. Muhammad, and Plaintiff participated in the mediation. (Terry Decl., ROI at 76.) Plaintiff has testified that at the outset of the mediation, Ms. Corona stated: "I told [Mr. Muhammad] to take [Plaintiff] off of Mondays until we find out what's going on." (Terry Depo. at 131:25–132:2, Mot. Sum. J. Ex. 21.) Plaintiff interpreted this statement as meaning that Ms. Corona instructed Mr. Muhammad to change his schedule back to Monday through Friday prior to the mediation session, after she received notice of his allegations to the EEO counselor.

Plaintiff also claims that when Ms. Corona made the above statement, Ms. Hill and Mr. Washington responded, "no, no, you can't do that[.]" (*Id.* at 132:3)  Ms. Corona denies that this exchange occurred (Corona Decl., ROI at 211–12), and the other meeting attendees have testified that they do not remember any such exchange.  (Muhammad Depo. at 47:10–48:2; Washington Decl. ¶ 4, Mot. Sum. J. Ex. 22; Hill Decl. ¶ 4, Mot. Sum. J. Ex. 17.)

During the mediation, Ms. Corona and Mr. Muhammad explained that giving Plaintiff Mondays off created staffing issues, and that Plaintiff had not provided medical documentation establishing his need for a permanent four-day work schedule.  (Corona Decl., ROI at 202–03; Muhammad Decl., ROI at 270.)  Plaintiff claimed, to the contrary, that he had already submitted medical documentation to Mr. Walton proving his ongoing need to exclusively telework and to have Mondays off.  (Muhammad Depo. at 54:9–13.)  Following the meeting, Ms. Corona and Mr. Muhammad confirmed with Mr. Walton that the medical letters the Agency had received did not establish that having Mondays off was medically necessary.  (Corona Decl., ROI at 202–03; Walton Decl., ROI at 398.)

On February 24, Plaintiff took part in a meeting with Ms. Corona, Mr. Muhammad, and Mr. Walton.  (2/24/17 Corona Email, ROI at 26.)  They informed Plaintiff that he would not receive Mondays off, but that he would be placed on a set work schedule, would not be required to work night shifts, and would be allowed to telework Monday, Tuesday, Thursday, and Friday.  (*Id.*)[2] Then, on March 2, 2017, the Agency authorized Plaintiff to telework every day.  (3/2/17 Muhammad Email, ROI at 145.)  However, the Agency still did not modify Plaintiff's schedule to

---

[2] The Complaint includes an allegation that during this call, "Ms. Corona stated that she was taking away his Mondays off because of the complaint Plaintiff Terry filed." (Compl. ¶ 17, ECF No. 1.)  However, Plaintiff does not mention or provide evidence in support of this allegation in his summary judgment submissions.  Additionally, while the Complaint includes allegations related to Plaintiff's "maxi-flex" schedule status (*id.* ¶¶ 17–19), Plaintiff contradicted those allegations in his deposition (Terry Depo. at 38:9–40:22) and has effectively conceded Defendant's argument on that issue by failing to address it in his summary judgment briefing.

5

give him Mondays off, and he was required to take leave in order to continue attending therapy appointments on Mondays. (*Id*.)

Plaintiff filed a formal EEO complaint on March 3, 2017, and the Agency then conducted an investigation. (Mem. Op. at 4.) After the Agency concluded that it had reasonably accommodated Plaintiff's disabilities and did not act discriminatorily, Plaintiff filed the instant suit on January 3, 2018. (Compl.) Plaintiff asserted claims against Defendant for racial discrimination (Count I) in violation of Title VII of the Civil Rights Act of 1964, codified, as amended, at 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); retaliation (Count II), in violation of Title VII; failure to accommodate (Count III), in violation of the Rehabilitation Act of 1973, codified as amended, at 29 U.S.C. §§ 791 *et seq*. ("Rehabilitation Act"); and disability discrimination (Count IV), in violation of the Rehabilitation Act. (*Id*.)

On June 7, 2018, Defendant moved to dismiss. (ECF No. 11.) The Court dismissed Counts I, III, and IV, but allowed the retaliation claim to proceed. (Mem. Op.) The Court found that Plaintiff had effectively alleged that his managers unlawfully retaliated against Plaintiff for complaining to the EEO counselor by revoking his Tuesday through Friday schedule. (*Id.*) The Court specifically found that the Complaint's allegation that "Ms. Corona[] stated that she was taking away his Mondays off because of the complaint Plaintiff filed" established the necessary connection between Plaintiff's protected behavior and the employer's adverse action, precluding dismissal. (*Id*. at 15.) The question now before the Court is whether the record produced during discovery provides factual support for Plaintiff's allegations.

## II.    *Legal Standard*

Federal Rule of Civil Procedure 56(a) establishes that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

6

movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to[] the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Therefore, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249–50. Further, "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984).

### III.    Analysis

Summary judgment will be granted to Defendant because Plaintiff has failed to produce evidence from which a reasonable jury could infer unlawful retaliation. Title VII prohibits an employer from "discriminat[ing] against any individual" because that individual "opposed any practice made an unlawful employment practice by this subchapter," or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "Plaintiffs may prove [retaliation] either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792[] (1973)." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). Whether a plaintiff proceeds by direct evidence or the *McDonnell Douglas* burden-shifting method, he must show (1) that he engaged in protected activity and that, (2) because of this, (3) his employer took an adverse employment action against him. *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 577 (4th Cir. 2015).

The Court has already determined that Plaintiff "engaged in protected activities when he requested reasonable accommodations for his disabilities, reported that he was being treated differently than his Caucasian colleagues who were permitted to telework, and filed an EEO complaint with the Agency." (Mem. Op. at 13.) The Court has also found that a fact finder could determine that the Agency's termination of Plaintiff's four-day work week accommodation was the sort of adverse employment action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 68 (2006). (*See* Mem. Op. at 14 ("Accepting as true Plaintiff's allegations that his supervisor cancelled his Mondays off and denied his request for a maxi-flex schedule, such actions would be sufficient to dissuade a reasonable worker from making a discrimination charge.").) The critical question is therefore whether Plaintiff has produced evidence, direct or indirect, from which a fact finder could infer that the adverse action was taken because of his engagement in the protected activities. He has not.

Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co*., 435 F. 3d 510, 520 (4th Cir. 2006). The Complaint alleges two incidents that Plaintiff claimed directly demonstrated that the Agency revoked his four-day work week accommodation to punish him for complaining to the EEO counselor. First, the Complaint alleges

that at the February 22 mediation, "Ms. Corona stated concerning Plaintiff Terry, 'When I found out about the complaint, I told [Mr. Muhammad] to take him off of Mondays until we evaluate the situation and see what's going on.'" (Compl. ¶ 16.)  Second, the Complaint alleges that during the subsequent February 24 conversation in which Plaintiff was informed he would return to a five-day work schedule, "Ms. Corona stated that she was taking away his Mondays off because of the complaint Plaintiff Terry filed." (*Id.* ¶ 17.)

As noted, the summary judgment briefing includes no mention of the alleged February 24 admission of retaliatory intent.  Nor does Plaintiff provide any evidence in support of this allegation.  Therefore, one of the two alleged incidents that Plaintiff claimed directly revealed retaliatory intent is entirely unsupported by the evidence.

On the other hand, Plaintiff has provided evidence that Ms. Corona made the alleged comment during the February 22 mediation.  In his deposition, Plaintiff testified that Ms. Corona "said something like, [']wow, I told [Mr. Muhammad] to take him off of Mondays until we find out what's going on[.']" (Terry Depo. at 131:25–132:2.)  While the fact that Ms. Corona denies making this statement and the other witnesses deny recalling it is notable, it does not provide a basis for a finding on summary judgment that Ms. Corona did not make the statement.

However, the events leading up to and following the mediation strongly support Defendant's narrative and prove that Ms. Corona did not, in fact, "take [Plaintiff] off of Mondays until [she found] out what's going on[.]"  To briefly summarize the undisputed facts: on January 11, Plaintiff contacted an EEO counselor alleging discrimination because he anticipated that he would not be "allowed to telework 4 days a week with every Monday off." (EEO Mediation/ Counselor's Report, ROI at 51–54.)  The EEO counselor subsequently informed Ms. Corona of Plaintiff's allegations. (Corona Decl., ROI at 205.)  Plaintiff was allowed to continue his four-day

work schedule in the weeks leading up to the mediation. (Compl. ¶ 17.) Ms. Corona testified that she delayed revisiting his schedule in part because she deemed it prudent to wait until the mediation to take any action (Corona Decl., ROI at 212), and Mr. Muhammad has confirmed that he does not recall Ms. Corona instructing him to alter Plaintiff's schedule prior to the mediation (Muhammad Depo. at 48:3–12). On February 24, after the mediation had been held and management had confirmed that Plaintiff's documentation did not establish a need for Mondays off, Ms. Corona then informed Plaintiff that the Agency would be moving him back to a five-day work schedule. (2/24/17 Corona Email, ROI at 26.) However, she went on to provide him additional accommodations, including allowing him to telework every day. (3/2/17 Muhammad Email, ROI at 145.)

Regardless of what precisely Plaintiff heard Ms. Corona say during the February 22 mediation, there is no corroboration in this sequence of events for the notion that Ms. Corona punished Plaintiff for contacting the EEO counselor by revoking his four-day work week until she could "find out what's going on." Rather, she took the opposite approach, allowing him to retain his four-day work week accommodation until a full inquiry was conducted. And even once the Agency had determined that Plaintiff's medical documentation did not support his request, management still granted Plaintiff an additional accommodation by allowing him to telework every day. Taking the evidence in the light most favorable to Plaintiff, Ms. Corona's comment is at worst a stray remark, bearing no connection to the Agency's actual actions. *See E.E.O.C. v. CTI Glob. Sols. Inc.*, 815 F. Supp. 2d 897, 906 (D. Md. 2011) ("Stray or isolated remarks may not qualify as direct evidence in employment discrimination actions."). The facts simply do not support a finding of direct evidence of retaliation.

Likewise, Plaintiff has not made an indirect showing of retaliation under *McDonnell Douglas*. "The *McDonnell Douglas* framework is a three-step burden-shifting framework." *Foster*, 787 F.3d at 250. In the first phase, the plaintiff must make out a *prima facie* case of retaliation. In the second, the "burden then shifts to the [employer] to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Id*. "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for discrimination." *Id*. (internal quotations and citations omitted).

Assuming *arguendo* that Plaintiff has made a *prima facie* case, Defendant has put forth a compelling legitimate non-discriminatory reason for its action: namely, that the Agency's staffing needs rendered it a substantial burden for Plaintiff to permanently have Mondays off, and that absent a letter from a medical provider specifically establishing that an employee needed Mondays off, that was an accommodation the Agency would not grant. (*E.g.*, Corona Decl., ROI at 204–9; Muhammad Decl., ROI at 269–77.) Notably, the Agency provided uncontested evidence that no employees in Plaintiff's position were permitted to work the compressed schedule he requested. (Corona Decl., ROI at 209.)

Plaintiff is entirely unable to rebut this proffered legitimate nondiscriminatory reason. In his briefing, Plaintiff's only attempt to establish pretext is to argue that the letters from his medical providers did, in fact, establish his need for Mondays off. (Opp'n Mot. Sum. J. at 12–13, ECF No. 60.) However, the Agency's contemporaneous correspondence both with Plaintiff and internally clearly reflect that the Agency did not consider the documentation Plaintiff had submitted to be sufficiently definitive regarding his need for Mondays off to justify such a burdensome permanent accommodation. Plaintiff has provided no evidence that the standard against which his requests

were measured was any different than that applicable to other employees, or that this standard changed after he contacted the EEO counselor on January 11. The evidence indicates that the Agency's representatives consistently applied Agency rules to Plaintiff, and that if anything, the Agency responded to Plaintiff's allegations to the EEO counselor by trying to appease Plaintiff, not by punishing him. In sum, Plaintiff has failed to provide evidence of retaliation.

## IV.     *Conclusion*

For the foregoing reasons, an order shall enter granting Defendant's motion for summary judgment.

DATED this 21st day of July, 2020.

BY THE COURT:

_____/s/_____

James K. Bredar
Chief Judge